# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

FRANCISCO PEREZ-ABREU,

     **Plaintiff,**

     **v.**                      **Civ. No. 21-1196 (ADC)**

METROPOL HATO REY, LLC,

     **Defendant.**

## OPINION AND ORDER

I.    **Introduction**

Before the Court is defendant Metropol Hato Rey, LLC's ("defendant") motion for summary judgment and accompanying statement of uncontested material facts. **ECF Nos. 42 and 43**. Defendant seeks summary judgment denying plaintiff Francisco Pérez-Abreu's ("plaintiff") age and national origin discrimination and retaliation claims under federal and Puerto Rico law, as well as his wrongful discharge claim under Puerto Rico law.

Plaintiff alleges that he was terminated from his employment as a waiter in defendant's restaurant in Hato Rey, Puerto Rico ("Metropol") because he was 64 years old at the time and because of his Dominican nationality. Plaintiff also claims that his termination was in retaliation for a prior age discrimination suit he had filed against defendant for reducing his shift hours and for initiating judicial complaints against defendant, including the present case. Defendant moves for summary judgment on all claims and counters with evidence purporting to show how plaintiff's numerous infractions against company policies and food safety standards

accumulated for over three years, two of them during the COVID-19 pandemic, to the point of his termination. Defendant denies that any sort of discriminatory animus intervened in its decision to terminate plaintiff.

For the reasons stated below, defendants' motion for summary judgment is **GRANTED.**

## II.    Procedural Background

On April 27, 2021, plaintiff filed the above-captioned complaint against defendant. **ECF No. 1**. He later amended the complaint twice, most recently filing a "third" amended complaint on September 1, 2022, after he was terminated by defendant. **ECF No. 19**. In this operative complaint, plaintiff alleged age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, national origin discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e to e-17, wrongful discharge under Puerto Rico Act No. 80 of May 30, 1976, as amended ("Law 80"), P.R. Laws Ann. t. 29, § 185a *et seq.*, age and national origin discrimination under Puerto Rico Act No. 100 of June 30, 1959, as amended ("Law 100"), P.R. Laws Ann. t. 29, §§ 146-151, and retaliation under Puerto Rico Act No. 115 of December 20, 1991, as amended ("Law 115"), P.R. Laws Ann. t. 29, § 194 *et seq.* Plaintiff alleged being terminated from his employment by defendant, because of his age and national origin, as well as because of his opposition to allegedly unlawful employment practices and the filing of a prior discrimination charge and judicial complaint. *See id.*, at 2 ¶ 10. Plaintiff also included nominal claims of hostile work environment under both ADEA and Title VII. *Id.*, at 9-10.

After several extensions, the parties engaged in dispositive motion practice. On November 13, 2023, defendant filed a motion for summary judgment and an accompanying statement of uncontested material facts ("SUMF"), seeking the dismissal of all claims in the operative complaint. **ECF Nos. 42** and **43**. Plaintiff filed his opposition to the motion (**ECF No. 60**) and an opposing statement of uncontested material facts ("OSUMF"), which included a separate, additional statement of uncontested material facts ("ASUMF") (**ECF No. 57**), on January 25, 2024.

Defendant then filed a reply in support of its motion as well as a consolidated reply statement of uncontested material facts and opposing statement to plaintiff's ASUMF on March 4, 2024. **ECF No. 69, 69-1,** and **69-2**. Plaintiff moved to strike the reply statement on the grounds that it did not comply with L. Civ. R. 7(c) and Fed. R. Civ. P. 56(d). **ECF No. 71**. The Court granted plaintiff's motion and gave defendant an additional opportunity to file a conforming reply. **ECF No. 73**. Defendant complied on March 14 ,2024, re-filing its reply as well as its revised reply statement of uncontested material facts ("RSUMF") and opposing statement to plaintiff's ASUMF ("O-ASUMF"). **ECF Nos. 74, 74-1,** and **74-2**. Defendant further requested leave to file its Exhibit 24 to the RSUMF in the Spanish language while it obtained an English-language translation, in compliance with L. Civ. R. 5(c). **ECF No. 76**. The Court granted the request and gave defendant until April 16, 2024, to submit the translated document. **ECF No. 78**. Plaintiff did not file the translation.

### III.    Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute that warrants a trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). Local Rule

56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."  L. Civ. R.  56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(e). *Id.* Local Rule 56(e), for its part, provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted... The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

## IV.    Discussion

### A.  The parties' respective positions.

Plaintiff included a total of seven causes of action in his operative complaint, and defendant follows this enumeration in its motion for summary judgment. The first and second causes of action allege disparate treatment and hostile work environment due to age discrimination under ADEA. The third and fourth causes of action allege disparate treatment and hostile work environment due to national origin discrimination under Title VII. The fifth cause of action alleges wrongful discharge or unjust termination under Puerto Rico Law 80, and the sixth and seventh causes of action allege national origin and age discrimination under Puerto Rico Laws 100 and 115, respectively.

Before delving into the merits, the Court summarizes each party's respective legal arguments for context, beginning with defendant as the movant.

First, defendant seeks dismissal of plaintiff's age and national origin disparate treatment claims under Title VII and ADEA. Applying the burden-shifting framework laid down by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified for each of the two modalities of discrimination, defendant argues that plaintiff cannot establish a *prima facie* case. Specifically, defendant posits that plaintiff cannot establish that his work at Metropol met its legitimate expectations or that other younger or non-Dominican employees were treated more favorably than him. *See* Mot., **ECF No. 42** at 3-11, 14-18. Further, defendant argues, in a pair of substantially identical footnotes, that plaintiff has failed to plead allegations of

harassment anywhere near the level of severity or pervasiveness required to state a hostile work environment claim under either Title VII or ADEA. *Id.*, at 6 n.3, and at 17 n.4. Defendant also claims that some of the incidents that plaintiff alleges constitute age discrimination occurred beyond the applicable statute of limitations, impeding plaintiff from supporting his ADEA claims on said incidents. *Id.*, at 9-10.

Second, defendant seeks dismissal of plaintiff's retaliation claims under both Title VII and ADEA. Applying the *McDonnell Douglas* framework (as applied to retaliation claims), defendant argues that plaintiff cannot meet the causality prong. In other words, defendant claims that plaintiff cannot establish that his termination was due to his protected activity, which in this case, was the filing of a discrimination charge and a prior judicial complaint. *See* Compl., *Pérez-Abreu, et al. v. Metropol Hato Rey, LLC, et al.*, No. 18-cv-1886 (PG) (D.P.R. Nov. 13, 2018), at ECF No. 1. Therefore, defendant contends that plaintiff has also failed to make out a *prima facie* case for retaliation under either Title VII or ADEA. *See* **ECF No. 42** at 11-14, 18-20.

Third and last, defendant seeks the dismissal of plaintiff's Puerto Rico law claims for the same reasons it argues plaintiff's Title VII and ADEA claims fail. In addition, defendant points to evidence demonstrating just cause for plaintiff's termination. But regardless of the merits of these Puerto Rico law claims, defendant argues that, because the federal law claims should be dismissed, the Court should also decline to exercise supplemental jurisdiction over the Puerto Rico law claims under 28 U.S.C. § 1367(c)(3) and should dismiss them without prejudice. *See* **ECF No. 42** at 20-22.

In response, plaintiff argues that the *McDonnell Douglas* framework is inapplicable because he has pointed to direct evidence of discriminatory comments by defendant's owners and managers. Opp'n, **ECF No. 60** at 3-6. Alternatively, plaintiff contends that summary judgment should not issue because there is a genuine issue of material fact as to whether defendant's proffered reasons for his termination are pretextual. *Id.,* at 6-11.

**B. Plaintiff's disparate treatment claims.**

As related above, defendant's challenge to plaintiff's disparate treatment claims is based on the application of the *McDonnell Douglas* framework. This framework allows a plaintiff to "make out an inferential case of the alleged discrimination," that is, to establish that his employer's motives were discriminatory by means of circumstantial evidence. *See Rivera-Rivera v. Medina & Medina, Inc.,* 898 F.3d 77, 88 (1st Cir. 2018). The First Circuit has consistently applied it to ADEA claims. *Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.,* 999 F.3d 37, 50 (1st Cir. 2021); *Vélez v. Thermo King de Puerto Rico, Inc.,* 585 F.3d 441, 447 n.2 (1st Cir. 2009).

Importantly, however, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985) (citing *Teamsters v. United States,* 431 U.S. 324, 358, n.44 (1977)). The First Circuit has expounded on what direct evidence looks like in the context of discrimination:

> "Direct evidence is evidence which, in and of itself, shows a discriminatory animus." *Jackson v. Harvard Univ.,* 900 F.2d 464, 467 (1st Cir. 1990). It "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.,* 214 F.3d 57, 60 (1st Cir. 2000).… "[S]tray remarks in the workplace,

particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself" do not qualify as direct evidence. *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996).

*Zampierollo-Rheinfeldt*, 999 F.3d at 51–52 (alterations in original) (some citations omitted).

Plaintiff argues that the *McDonnell Douglas* framework does not apply here because he has presented direct evidence of age and national origin discrimination. **ECF No. 60** at 3-6. Plaintiff points to instances where one of defendant's managers, Rafael Cedeño-Abreu ("Mr. Cedeño-Abreu"), and one of its owners, Rey Vega ("Mr. Vega"), allegedly made "various age-based statements" that constituted age discrimination, specifically, statements made between January 2019 to January 2022. *Id.*, at 4-5. Plaintiff also points to three comments made by Metropol managers Mr. Cedeño-Abreu and Héctor Luis Andino-Medina ("Mr. Andino-Medina"), which he claims were discriminatory remarks against people of Dominican origin. *Id.*, at 5-6.

Having reviewed these comments (which are detailed further below in this Opinion), even taking as true that these individuals were decisionmakers, that the comments were made, and that they were discriminatory, the proffered statements do not relate directly to the decision to discipline or terminate plaintiff. They are stray remarks insufficient to qualify as direct evidence of discrimination. Therefore, plaintiff cannot evade summary judgment by relying on these statements without more, as they are not direct evidence of discrimination.

### 1. Application of *McDonnell Douglas*.

In the absence of direct evidence, the Court applies the *McDonnell Douglas* framework. In this inferential inquiry, plaintiff's indirect evidence is taken into consideration. The first step is for plaintiff to establish a *prima facie* case of discrimination.

### a. Disparate treatment because of national origin under Title VII.

Under Title VII, a plaintiff meets the *prima facie* standard by establishing that "(1) [he] is a member of a protected class; (2) [his] employer took an adverse employment action against [him]; (3) [he] was otherwise qualified; and (4) [his] position remained open or was filled by a person with qualifications similar to [his]." *Johnson v. Univ. of Puerto Rico*, 714 F.3d 48, 54 n.6 (1st Cir. 2013). The burden of establishing a *prima facie* case is not an onerous one and can be met easily. *Rivera-Rivera*, 898 F.3d at 88. If it is, then an inference or presumption of discrimination arises in favor of plaintiff and the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See id.* (quoting *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012)). This is a burden of production, not persuasion. *Johnson*, 714 F.3d at 53-54 (quoting *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 470 (1st Cir. 2010)). If the defendant complies, then the presumption of discrimination drops out and the burden shifts again to plaintiff to establish, by preponderance of the evidence, that the proffered reason is pretext for discriminatory animus. *See Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 45 (1st Cir. 2002). But ultimately, "[o]n summary judgment, the question is whether plaintiff has

produced sufficient evidence that he was discriminated against due to his [age or] national origin to raise a genuine issue of material fact." *Id.*, at 45.

Defendant does not dispute that plaintiff meets the first two requirements of the *prima facie* test but challenges his compliance with the last two. **ECF No. 42** at 15-18. As to the third requirement, defendant marshals in support a series of incidents, mostly backed by documentary evidence and deposition statements, which purportedly show that plaintiff failed to follow company policies and procedures as well as standard food safety practices with which all employees are required to comply, particularly given the then ongoing COVID-19 pandemic. *See id.*, at 7-8, 15-16. This is also the same evidence defendant uses to establish that it had a legitimate, non-discriminatory reason for terminating plaintiff at step two of the *McDonnell Douglas* test. *Id.*, at 10, 17-18. But the focus at this stage is on plaintiff's ability to establish that he was qualified and competent. *Cf. Acevedo-Parrilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128, 139 (1st Cir. 2012) ("A plaintiff is not required, at the prima facie stage, to disprove the defendant's proffered nondiscriminatory reason for taking an adverse employment action."). To that end, plaintiff relies on the fact that he has been a waiter for Metropol for 34 years, and on deposition testimony of former Metropol staff attesting to his qualities as a good, loyal, well-groomed and sought-out waiter with a good clientele. *See* **ECF No. 60** at 7; OSUMF 10 and 11, **ECF No. 57** at 4**;** ASUMF 8, **ECF No. 57** at 15; ASUMF 14, **ECF No. 57** at 16; *see also* Tr. of Deposition of José Luis Molina-Camacho, **ECF No. 60-13** at 10, 39, 47, 48, and 61; Tr. of Deposition of Héctor Luis Andino-Medina, **ECF No. 60-12** at 17. While defendant correctly limits the temporal scope of

most of these accolades to exclude the period in question (2019-2022), the lack of any evidence of recent performance reviews (positive or negative) favors plaintiff at this early stage of the analysis.[1] The Court will thus find that plaintiff meets the second requirement of the *prima facie* case.

As to the fourth requirement, the Court will defer its analysis until the third step of the *McDonnell Douglas* test because the First Circuit has instructed lower courts to analyze so-called "comparator" evidence not in the *prima facie* phase but in the pretext phase. *See Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003) ("[I]n disparate treatment cases, comparative evidence is to be treated as part of the pretext analysis, and not as part of the plaintiff's prima facie case."); *see also Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 222 (1st Cir. 2007) (citing *Kosereis* approvingly). Moreover, said evidence has been deemed "important" but not "necessary" in the Title VII context. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 274 n.10 (1st Cir. 2022).

Therefore, the Court will assume that plaintiff has established a *prima facie* case of national origin discrimination in the form of disparate treatment. The Court also grants that defendant has met its own burden of producing a legitimate, non-discriminatory reason for disciplining and terminating plaintiff: he committed several violations of company policies and procedures and food safety standards applicable to all restaurant employees. This allows the Court to move

---

[1] Mr. Molina-Camacho stopped working for defendant in February of 2015, for which reason he has no direct personal knowledge of working conditions in Metropol after that date. *See* O-ASUMF 8, **ECF No. 74-2** at 3.

on to the third step of the *McDonnell Douglas* test and analyze, in the summary judgment context, whether plaintiff has shown that a genuine issue of material fact exists as to whether defendant's proffered reasons are pretextual and that the motivating factor was a discriminatory animus against Dominicans. *Luceus v. Rhode Island*, 923 F.3d 255, 258 (1st Cir. 2019). "That is to say, [p]laintiff must demonstrate that it is more likely than not [he] was terminated because [he] was [Dominican], rather than for failure to follow company policy." *Zayas-Ortíz v. Becton Dickinson Caribe, Ltd.*, 968 F. Supp. 2d 463, 471 (D.P.R. 2013).

> **(1) Evidence of pretext and discriminatory animus based on national origin.**

"It is the settled law of this circuit that to survive a motion for summary judgment on a Title VII disparate treatment claim, a plaintiff must produce evidence that: (1) the employer's articulated reason for laying off the plaintiff is a pretext; and (2) the true reason is discriminatory animus." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6 (1st Cir. 2000). There is no mechanical formula for making this determination. *Id.* In the end, the Court "must weigh all the circumstantial evidence of discrimination, including the strength of the plaintiff's prima facie case and the employer's proffered reasons for its actions…." *Id.*, at 7.

Plaintiff's main arguments for pretext are that defendant has not established that the incidents for which it reprimanded and terminated him were in violation of company policies and procedures, and that any such policies and procedures were selectively enforced against him. *See* **ECF No. 60** at 7-10. Plaintiff also alludes to a handful of allegedly discriminatory

comments by two Metropol managers directed at Dominicans. The Court will first address plaintiff's attack on the incidents that he alleges are pretext and then consider his evidence of animus.

For context, the incidents put forth by defendant, which range from January 24, 2019 to July 7, 2022, are listed below:

- January 24, 2019 – plaintiff failed to input payment from a table he serviced in the restaurant's computer system. *See* SUMF 19, **ECF No. 43** at 5; *see also* **ECF No. 45-1** (written reprimand from supervisor).

- February 13, 2019 – plaintiff did not follow company procedure by notifying his supervisor forty-five minutes before his shift started that he was going to be late due to a medical appointment, when the rule is that such notifications should be made at least two hours beforehand. *See* SUMF 24 and 25, **ECF No. 43** at 6-7; *see also* Partial Tr. of Deposition of Francisco Pérez-Abreu, p. 36, **ECF No. 43-2** at 2, and pp. 38 through 40, **ECF No. 43-2** at 3-5; **ECF No. 52-2** (written reprimand from supervisor).

- July 30, 2019 – plaintiff took a "half a can-can pork chop" left over by a client for himself and ate it without his supervisor's permission and outside his meal period. *See* SUMF 42, **ECF No. 43** at 11; *see also* Partial Tr. of Deposition of Francisco Pérez-Abreu, p. 22, **ECF No. 43-14** at 2; **ECF No. 45-3** (written reprimand from supervisor).

- December 20, 2019 – plaintiff mixed up a customer's order. *See* SUMF 27, **ECF No. 43** at 7; *see also* **ECF No. 45-2** (written reprimand from supervisor).

- March 4, 2020 – plaintiff ate food off a plate that was intended to be served to a customer. *See* SUMF 40 and 41, **ECF No. 43** at 10; *see also* **ECF No. 52-4** (memorandum of administrative investigation).

- October 1, 2020 – a shrimp fell off a seafood salad plate and plaintiff put it back on the plate. *See* SUMF 46, **ECF No. 43** at 12; *see also* **ECF No. 52-5** (written reprimand from supervisor).

- February 23, 2021 – plaintiff used the previous day's menu when attending to a customer. *See* SUMF 31 and 32, **ECF No. 43** at 8.

- April 22, 2022 – plaintiff touched lettuce and other salad ingredients without gloves instead of using tongs. *See* SUMF 47, **ECF No. 43** at 12; *see also* Partial Tr. of Deposition of Rafael Cedeño-Abreu, p. 12, **ECF No. 43-10** at 2, and pp. 16 through 19, **ECF No. 43-10** at 6-9; **ECF No. 52-6** (written reprimand from supervisor).

- July 7, 2022 – plaintiff used a glass to pour more soda in a customer's glass. *See* SUMF 51, **ECF No. 43** at 13-14; *see also* Partial Tr. of Deposition of Rafael Cedeño-Abreu, p. 12, **ECF No. 43-10** at 2.[2]

Defendant supports many of the above incidents either by deposition testimony from one of defendant's managers, Mr. Cedeño-Abreu, or by contemporaneous written admonitions made out to plaintiff by his supervisors. Defendant also submitted an unsworn statement under

---

[2] Defendant failed to include the portions of plaintiff's deposition that purportedly support SUMF 51, **ECF No. 43** at 13-14, in which it attempts to establish that plaintiff drank from the glass after pouring the customer's drink from it.

penalty of perjury subscribed by defendant's president, Mr. Alexandro Ravelo-Canosa ("Mr. Ravelo-Canosa"), containing a summary of some of these incidents and a copy of plaintiff's termination letter, which is signed by Mr. Ravelo-Canosa. *See* **ECF No. 43-8**.[3]

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014); *see also Theidon v. Harvard University*, 948 F.3d 477, 497 (1st Cir. 2020) (citing *Adamson*). Pretext, moreover, "can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices." *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 68 (1st Cir. 2008). Plaintiff attempts to establish that defendant's actions were pretextual, first, by contesting defendant's version of most of the incidents here listed.

While plaintiff admits to the February 13 and December 20, 2019 incidents—arriving late to his shift due to a medical appointment and mixing up a customer's order—he offers a competing version of events, supported by his own sworn deposition testimony, for most of the

---

[3] As to this last piece of support, while the Court can take some notice that the president of a corporation can have general knowledge of internal disciplinary actions, nothing in the unsworn statement, besides Mr. Ravelo-Canosa's position as president and the dismissal letter (*see* **ECF No. 43-8** at 5-6, and English translation at **ECF No. 52-1**), indicates that he has personal knowledge of the incidents or that he is the custodian of the documents there attested to. That said, plaintiff did not object to the ultimate admissibility at trial of any of the documents submitted by defendant in support of its SUMF. *See* Fed. R. Civ. P. 56(c)(2) (allowing a nonmovant to object to a proposed fact on the basis that it "cannot be presented in a form that would be admissible in evidence."). Therefore, the Court will afford these documents their due weight in its analysis.

others.[4] For example, as to the January 24, 2019 incident regarding the missing payment, plaintiff stated in his deposition that he did indeed input the client's bill in the restaurant's computer system and that the client had paid, accusing defendant of making up the basis for the disciplinary action. *See* OSUMF 19 and 21, **ECF No. 57** at 5-6; ASUMF 50, 53, and 54, **ECF No. 57** at 21-22. In addition, plaintiff states that, months later, he was able locate the customer and the relevant receipt and submitted a copy to defendant. *See* OSUMF 23, **ECF No. 57** at 6; ASUMF 54, **ECF No. 57** at 22; *see also* **ECF No. 57-6** (copy of receipt).[5] But plaintiff does not otherwise contest that the order and payment in question did not appear in defendant's computer system at the end of the day of the incident, which defendant argues affected the restaurant's operations. *See* OSUMF 22-23, **ECF No. 57** at 6.

---

[4] Defendant's repeated objection to plaintiff's deposition testimony as self-serving and equivalent to a "sham" affidavit is noted. *See, e.g.*, **ECF No. 74** at 9-10. However, this is not, by itself, enough reason for the Court to disregard it as evidence. "To be clear, a party's affidavit may be self-serving and yet, still present genuine issues of fact if it contains relevant information of which the party has first-hand knowledge." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 315 (1st Cir. 2016). The same logic applies to a party's deposition testimony: "provided that the nonmovant's deposition testimony sets forth specific facts, within his personal knowledge, that, if proven, would affect the outcome of the trial, the testimony must be accepted as true for purposes of summary judgment." *Velázquez-García v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007).

[5] Plaintiff's denial of SUMF 19 is unspecific and does not comply with Fed. R. Civ. P. 56(c)(1)(A) or L. Civ. R. 56(c) insofar as it merely refers the Court to the ASUMF without any specific citation. Further, faced with an authenticity objection from defendant, plaintiff makes no effort to explain how the copy of the purported receipt would be admissible at trial. On the other hand, defendant again failed to include the portions of Mr. Cedeño-Abreu's deposition that purportedly support SUMF 23, **ECF No. 43** at 6, in which it attempts to diminish the relevance of the document presented by plaintiff. The Court could disregard this matter altogether, but going beyond its duty on summary judgment, the Court has remedied defendant's omission by referencing the deposition transcript submitted on reply (**ECF No. 74-4**), and has done the same with plaintiff's omission by finding the exact reference to the January 24, 2019 incident in ASUMF 19 to 24 (**ECF No. 57** at 17-18) and determining from plaintiff's deposition testimony that plaintiff obtained the copy of the receipt from the customer himself. **ECF No. 57-2** at 59-62; *see also* Fed. R. Evid. 901(b)(1) ("Testimony that an item is what it is claimed to be" sufficient to satisfy authentication requirement).

Another example is the October 1, 2020 "shrimp incident." The written reprimand submitted by plaintiff (**ECF No. 52-5**) states that the shrimp fell off a plate onto the floor before plaintiff picked it up and put it back on the plate, at which point a supervisor stopped plaintiff from serving it to the customer. But in its SUMF, defendant is careful not to say that the shrimp fell to the floor—as the documentary evidence would suggest.[6] And plaintiff, for his part, testified in his deposition that the shrimp fell off the plate onto the tray where the dishes were being served, not the floor. *See* OSUMF 46, **ECF No. 57** at 11-12; *see also* Tr. of Deposition of Francisco Pérez-Abreu (Continuation), **ECF No. 57-3** at 97-100. Yet the fact remains that the parties agree that the shrimp fell off the plate and was placed again on the plate by plaintiff, which, given that plaintiff could not say under oath that the tray was clean, may very well still be a health standard violation. *See* Tr. of Deposition of Francisco Pérez-Abreu (Continuation), **ECF No. 57-3** at 102-103.

Relatedly, plaintiff also attempts to cast doubt on whether the policies and procedures that plaintiff was accused of violating existed at all, or, even if they did, whether they were selectively applied against him due to his national origin. In this matter, the Court recognizes that defendant has not made it easy to determine the content of its policies and procedures. For instance, defendant failed to submit an English translation of the portion of its employee's manual relating to hygiene (which it requests the Court to consider) even after being granted an

---

[6] Plaintiff's termination letter, attached to Mr. Ravelo-Canosa's unsworn statement, contains the same allegation about how the shrimp fell to the floor. **ECF No. 52-1** at 2.

extension of time to do so. *See* **ECF Nos. 76** and **78**. The Court therefore cannot refer to those standards to establish defendant's legitimate work expectations or to measure plaintiff's purported conduct against them. *See* L. Civ. R. 5(c); *see also* 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); *Kenyon v. Cedeño-Rivera*, 47 F.4th 12, 19 (1st Cir. 2022) (citing *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) for the rule that "the parties have an obligation to provide certified translations of any Spanish-language documents on which they rely"). The Court is left with Mr. Ravelo-Canosa's unsworn statement and its managers' deposition testimonies to establish these standards in relation to plaintiff's purported infractions.[7]

To that end, defendant attempts to establish through Mr. Ravelo-Canosa that "compliance with health and safety requirements and maintaining a reputation for cleanliness and the proper handling of food and drink are critical for a restaurant such as Metropol to be able to succeed and to remain in business…." SUMF 34, **ECF No. 43** at 9; *see also* OSUMF 44 and 45 (plaintiff admitting that "[m]aintaining cleanliness is important in a restaurant setting" and that improper food handling incidents can be "devastating" to a restaurant). Defendant at times

---

[7] Defendant's reliance on *Díaz Díaz v. Crowley Liner Servs., Inc.*, 281 F. Supp. 2d 340 (D.P.R. 2003), and *Holleman v. Art Crating Inc.*, No. 12 CIV. 2719 VMS, 2014 WL 4907732 (E.D.N.Y. Sept. 30, 2014), for the proposition that "it has been recognized that employee policies are sometimes oral in nature" is somewhat misleading. *See, e.g.,* RSUMF 36, **ECF No. 74-1** at 27. These cases do not directly stand for that proposition but rather contain statements regarding whether these policies can be considered as direct evidence of discrimination and on the weight to be given to the absence of written workplace policies at the pretext stage of the *McDonnell Douglas* test. Nonetheless, the Court sees no reason (and plaintiff points to none) why testimony as to the content of restaurant policies and procedures cannot be considered as proof thereof on summary judgment.

adduces to Mr. Cedeño-Abreu's deposition testimony to establish that some of the incidents involving allegations of improper food handling—the porkchop, shrimp, lettuce, and soda incidents—were violations of both company policies and "mandate[s] from the Department of Health that go above what any employee handbook might say." SUMF 37, **ECF No. 43** at 9-10; *see also* SUMF 39, 43, 47, 48, 52, and 55, **ECF No. 43** at 10-12, 14. In particular, Mr. Ravelo-Canosa and Mr. Cedeño-Abreu both characterized the lettuce and soda incidents as violations of health and sanitation guidelines and standards due to the risk of contamination, which was especially acute during the COVID-19 pandemic. *See* SUMF 47-55, **ECF No. 43** at 12-14. According to Mr. Cedeño-Abreu, during the pandemic, defendant "stressed the use of hairnets, face masks and gloves" and was "quite strict with rules that were put in place in order to minimize or avoid the spread of COVID 19." Partial Tr. of Deposition of Rafael Cedeño-Abreu, page 19, **ECF No. 43-10** at 9.

On top of this, defendant characterizes the other non-food-safety related incidents as violations of company rules applicable to all its employees. SUMF 17, **ECF No. 43** at 5; *see also* SUMF 19, **ECF No. 43** at 5 (classifying missing payment as violation of "proper procedures regarding handling of methods of payment"); SUMF 24-25, **ECF No. 43** at 6-7 (classifying plaintiff's failure to timely notify that he would be late to his shift as noncompliance with "Metropol's Employee Handbook"); SUMF 28-29, **ECF No. 43** at 7-8 (classifying plaintiff's mix-up of a customer's order as deviation from "the way orders were taken at Metropol"); SUMF 31, **ECF No. 43** at 8 ("[Plaintiff] incurred in the practice of using the wrong menu, which is against

company policy"); and SUMF 39, 40 and 42, **ECF No. 43** at 10-11 (characterizing plaintiff "eating food off a plate which was to be served to another person" as "unacceptable" and a "serious health violation").[8]

Plaintiff's response varies as to each imputation, but generally consists of his own deposition testimony and that of former Metropol manager Mr. Andino-Medina to the effect that defendant's policies were either non-existent or selectively enforced against plaintiff and no one else.[9] *See, e.g.*, OSUMF 24, **ECF No. 57** at 6-7 (claiming that "Plaintiff is the only employee who has ever received a warning for" calling his supervisor less than forty-five minutes before his shift started to notify that he would be late), OSUMF 27, **ECF No. 57** at 7 (admitting that he placed the wrong order but claiming that "all waiters commit this mistake from time to time

---

[8] The Court notes that defendant's characterization of the menu incident as being part of a "practice" is somewhat misleading, as only one such incident is alleged to have occurred. Similarly, the events that defendant characterizes as "eating food off a plate which was to be served to another person" are not clearly established, as defendant's best evidence for one of them is a vague statement by Mr. Cedeño-Abreu that "you can't just pick up food that belongs to client with your bare hands, taste it, and then take it over to the client's table." **ECF No. 43-10** at 15. The other is the porkchop incident, the details of which are contested by plaintiff. *See* ASUMF 57 to 68, **ECF No. 57** at 23-24.

[9] Plaintiff failed to adhere to this Court's anti-ferret rule, L. Civ. R. 56(e), at numerous points in his OSUMF, denying defendant's statements with little to no evidence apart from an unspecific reference to his ASUMF. *See, e.g.*, OSUMF 34, **ECF No. 57** at 8-9 ("Admitted. However, these types of policies and procedures are not enforced at Metropol. They were only enforced discriminatorily and retaliatorily against Plaintiff. See Separate Section of Additional Facts Proposed by Plaintiff, with supporting evidence, below."). That would normally be enough for the Court to disregard plaintiff's denial as deficient. However, the Court must also examine plaintiff's ASUMF, and when admitted, some of these statements serve to contest those of defendant. *Cf. Acevedo-Parrilla*, 696 F.3d at 137 (finding no abuse of discretion where district court disregarded additional facts in non-movant's OSUMF but considered properly supported additional facts included in separate section). Still, the Court cannot let pass that plaintiff's blatant failure to properly oppose many of defendant's proposed statements, as well as defendant's obstinately long and sometimes unnecessary refutation of plaintiff's OSUMF and ASUMF, show clear disregard for the mechanisms provided for in Local Rule 56. "Violations of this local rule are astoundingly common and constitute an unnecessary burden to the trial court's docket and time…." *López-Hernández*, 64 F.4th at 26. Accordingly, the Court strongly recommends that counsel for both parties reconsider their respective approaches to summary judgment practice in the future.

and no one gets disciplined") and ASUMF 69, **ECF No. 57** at 24 (describing his statement in the

December 20, 2019 written reprimand as to how it "was part of a selective prosecution against

him"); *see also* ASUMF 79, **ECF No. 57** at 26 (citing to Mr. Andino-Abreu's deposition testimony

to the effect that defendant had food preparation and handling "rules" but that they were not

enforced). Also, plaintiff claims that defendant's version of certain incidents (like the menu and

porkchop incidents) is incomplete or false. *See*, *e.g.*, OSUMF 31, **ECF No. 57** at 8 (offering a

different version of events as to the wrong menu incident) and OSUMF 42, **ECF No. 57** at 11

(denying plaintiff's version of events and citing to ASUMF 57 to 68, **ECF No. 57** at 23-24, all of

which, except ASUMF 67, are supported by plaintiff's deposition testimony).

But plaintiff has little evidence, besides his own testimony, to back up his version of

events, which diminishes the weight of his refutations. *See Velázquez-García v. Horizon Lines of

P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007).[10] As to the existence and enforcement of defendant's

policies and procedures, plaintiff's additional evidence consists of the testimony of Mr. Andino-

Abreu, which is compelling only to the extent that there may be a genuine question as to whether

preparing a salad with one's bare hands or pouring soda from a glass violated company policy.

---

[10] Plaintiff sometimes relies on the testimony of former waiter Mr. Molina-Camacho to imply that some of the rules plaintiff was accused of violating did not exist or were not enforced, or to support plaintiff's claim that he was mistreated by defendant. *See* ASUMF 9-10, **ECF No. 57** at 15-16. But, as noted above, Mr. Molina-Camacho has not worked in Metropol since February of 2015—approximately four years before plaintiff's first complained-of reprimand. *See* O-ASUMF 8, **ECF No. 74-2** at 3. He therefore has no knowledge of defendant's policies and treatment of plaintiff or others at the relevant times, making his statements on the matter irrelevant.

This is not enough to establish that all (or even a significant portion) of the reasons given for his reprimands and termination are pretextual.

The Court next considers plaintiff's lack of so-called "comparator" evidence. If plaintiff had presented any such evidence, it would undoubtedly serve as "powerful" support for his discrimination claim. *See Frith*, 38 F.4th at 274 n.10. However, plaintiff failed to put forth any evidence that defendant replaced him after termination with someone who was similarly qualified or that the position remained open. While the omission of comparator evidence is not fatal to plaintiff's claim, it certainly does not help him survive summary judgment. *See Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001) ("[A]n absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial.").

Plaintiff attempts to excuse his omission by pointing out that defendant refused to provide in discovery the ages of employees hired after his termination. **ECF No. 60** at 10-11. But notably, plaintiff makes no mention as to defendant's withholding of information on whether the position stayed open or of the qualifications of said hires, just their ages. That is not relevant for his Title VII claim. Furthermore, plaintiff does not support this supposed discovery omission with any record citation, and the docket in this case is bereft of any attempt by plaintiff to compel the production of documents or information from defendant. Plaintiff cannot now rely on a purported discovery omission when he failed to timely raise the issue before the Court.

In addition, plaintiff also argues that it is defendant's burden, in the summary judgment context, to establish a negative proposition: that it did not hire anyone to replace plaintiff or, that if it did, that that person was not similarly qualified. *Id.* While it is true that the movant for summary judgment has the burden of establishing that there are no trial-worthy issues of fact and that judgment should be entered in its favor, defendant here has challenged the sufficiency of plaintiff's evidence. Even in the context of summary judgment, it remains the burden of a non-moving plaintiff to defend his right to have his case heard at trial. *See Stratton v. Bentley Univ.*, 113 F.4th 25, 45-46 (1st Cir. 2024) ("We have described the burden of establishing a prima facie case of retaliation as 'light.' Nevertheless, [plaintiff] must still satisfy the requirements of a nonmoving party in opposing summary judgment.") (citations omitted). What *McDonnell Douglas* does is it allows the plaintiff to preserve this right by alluding to sufficient circumstantial evidence to establish that right, but it does not condone inaction.

Finally, to the extent that evidence of "selective enforcement" of employee policies is tantamount to comparator evidence, plaintiff's evidence falls way short of establishing the existence of similarly situated employees who were not disciplined for engaging similar conduct. *Cf. Frith*, 38 F.4th at 274 ("The term [selective enforcement] is evocative of the type of 'comparator' evidence that is often used to prove a Title VII claim -- that, for example, a Black employee was treated differently than a similarly situated white employee."). A bald assertion that plaintiff was treated differently from other employees, like those made by himself and Mr.

Andino-Abreu during their depositions, is not enough to establish pretext. Surviving summary judgment requires more.

Having considered plaintiff's evidence of pretext, the Court's evaluation of plaintiff's evidence of discriminatory animus fares no better. This evidence consists solely of a March 2021 comment by Mr. Cedeño-Abreu to plaintiff and in the presence of a third person ("Dominicans want to stake [their] flag here"), and two substantially similar comments made in January 2022 by Mr. Andino-Medina and Mr. Cedeño-Abreu in plaintiff's and other employees' presence (Mr. Andino-Medina: "I'm going to see what we're going to do with all these Dominicans") (Mr. Cedeño-Abreu: "What are we going to do with these Dominicans?"). *See* **ECF No. 60** at 5 (citing ASUMF 21 and 26, **ECF No. 57** at 17-18). Both Mr. Cedeño-Abreu and Mr. Andino-Medina deny having made these statements. *See* O-ASUMF 21, **ECF No. 74-2** at 10; O-ASUMF 26, **ECF No. 74-2** at 14-15. And defendant also points to plaintiff's failure, prior to his deposition, to include any mention of these comments in his interrogatory responses. *Id.* The Court's own review of the pertinent testimony does not reflect a persuasive justification for this omission. *See* Tr. of Deposition of Francisco Pérez-Abreu, **ECF No. 57-1**, at 137-42 (failing to adequately explain omission).

Nevertheless, supposing that these comments were indeed made—and in the absence of comparator evidence and even granting that plaintiff may have controverted some (but not all) of the facts underlying defendant's non-discriminatory reasons for his termination—would they be enough to create an inference of discriminatory animus worth taking to trial? The Court

recalls that to defeat summary judgment, plaintiff "must offer some *minimally sufficient* evidence, direct or indirect, both of pretext and of [defendant's] discriminatory animus." *Pearson v. Massachusetts Bay Transp. Auth.*, 723 F.3d 36, 40 (1st Cir. 2013) (internal quotation and citation marks omitted). But merely questionable behavior on the employer's part is insufficient to meet this bar. *See id.*, at 41 (citing *Acevedo-Parrilla v. Novartis ExLax, Inc.*, 696 F.3d 128, 140 (1st Cir. 2012)). On balance, taking both the evidence of pretext and of animus put forth by plaintiff, the Court concludes that, despite his efforts to contest many of the facts underlying the supposed infractions that ostensibly led to his termination, these are, more likely than not, instances of orderly discipline rather than subterfuge for discrimination. The evidence presented by plaintiff, who ultimately bears the burden of proof (even as nonmovant), is not enough to establish that there may have been a discriminatory motivation behind his termination. Three off-hand remarks referring to Dominicans in an ambiguous manner made during the span of ten months is not enough to conclude that national origin was a motivating factor behind defendant's decision to discipline and ultimately terminate him. And even assuming that defendant's proffered reason for disciplining or terminating plaintiff is inauthentic—something that is not quite borne out by the evidence—there is still little to indicate that the true motive was discrimination in violation of Title VII:

> [E]ven if a rational trier of fact could infer from the evidence of pretext that [the employer's] decision to fire [the employee] was 'unfair'… that proof is not sufficient to state a claim under Title VII. Title VII was not designed to transform courts into super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.

*Feliciano de la Cruz*, 218 F.3d at 8 (internal citation and quotation marks omitted).

On this record, the Court concludes that plaintiff has not shown that a trial-worthy issue exists regarding his national origin disparate treatment claim under Title VII. This claim must be dismissed. Therefore, the motion for summary judgment is **GRANTED** in relation to plaintiff's claim that he was disciplined or terminated on account of his national origin.

### b. Disparate treatment because of age under ADEA.

In age discrimination claims under ADEA, a *prima facie* case is one where the plaintiff establishes that "he was (1) at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (internal quotations and citation marks omitted).[11] As in Title VII, the burden is an easy one to meet.

Defendant's attack on plaintiff's ADEA *prima facie* case centers on plaintiff not meeting its legitimate expectations and on being unable to establish that defendant sought to replace him with someone of roughly equivalent qualifications to perform substantially the same work. *See* **ECF No. 42** at 8-10, 16. As discussed above, the Court finds that defendant is correct in that plaintiff failed to present any evidence that he was replaced by someone similarly qualified. The consequences of this failure, however, do not immediately dispose of his ADEA claim.

---

[11] The last requirement differs if the claimant was terminated as part of a reduction in force, which is not the case here. *See Zampierollo-Rheinfeldt*, 999 F.3d at 50–51 n.7. Defendant misstated the applicable formulation of this prong in its motion for summary judgment, applying the reduction in force variant. *See* **ECF No. 42** at 4.

In *Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc.*, 804 F.3d 127 (1st Cir. 2015), the First Circuit disregarded a lower court's dismissal of an ADEA age discrimination claim under a pretext analysis but proceeded to affirm the dismissal *de novo* on the basis that plaintiff had failed to establish that he met the fourth prong of the *prima facie* test. 804 F.3d at 130-132. There, contrary to here, the plaintiff had presented some comparator evidence, but the Court of Appeals considered such evidence insufficient. *Id.*, at 131. In contrast, plaintiff here points to no evidence whatsoever, abdicating his burden of establishing a *prima facie* case. If the Court were to rigidly follow the logic in *Del Valle-Santana*, as defendant requests, then plaintiff's ADEA disparate treatment claim would fail at the *prima facie* stage.

Nevertheless, "[t]he *McDonnell Douglas* methodology was never intended to be rigid, mechanized, or ritualistic." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (internal citation and quotation marks omitted). The ultimate question here is whether there is sufficient evidence of age discrimination to warrant a trial on the merits. Therefore, the Court will, out of an abundance of caution, assume that a *prima facie* case is present, and that defendant articulated a legitimate reason for terminating plaintiff along the contours of its Title VII analysis above. By doing so, the Court is able evaluate whether plaintiff has alluded to sufficient evidence to establish that defendant's decision to discipline and terminate him could have been pretextual and intended to mask a discriminatory animus towards him because of his age.

**(1) Evidence of pretext and discriminatory animus based on age.**

Plaintiff's main argument in favor of pretext is the same as that of his Title VII claim. To wit, he argues that defendant has not established that the incidents for which it reprimanded and terminated him were in violation of company policies and procedures, and that any such policies and procedures were selectively enforced against him. The Court has already found that plaintiff has not established the existence of a genuine dispute as to whether defendant's reasons for his reprimands and termination were pretextual, so there is no need to repeat that analysis here. The Court will therefore focus on plaintiff's arguments and evidence attempting to establish that defendant's decision was motivated by discriminatory animus towards his age.

To prove that there is a trial-worthy issue as to whether age-based discrimination was the motivation behind his discipline and termination, plaintiff alludes to a handful of comments made by some Metropol managers and one of defendant's owners, Rey Vega, that were allegedly discriminatory against older workers like himself. In essence, plaintiff claims that Mr. Cedeño Abreu referred to him at times as *viejo* or "old guy" in a hostile context. *See* ASUMF 19, **ECF No. 57** at 17 ("this old man thinks he owns this place") (citing Tr. of Deposition of Francisco Pérez-Abreu, **ECF No. 57-1** at 116-118, 128); ASUMF 21 and 27, **ECF No. 57** at 17-18 ("I don't know why the old guys don't retire"; "the old guys think they know everything"; "this old guy does whatever he pleases"; "they think they know it all") (citing Tr. of Deposition of Francisco Pérez-Abreu, **ECF No. 57-1** at 84-85, 101-114). However, the Court, after reviewing the cited portions of the deposition transcript, does not consider that the content of the statements in

these examples are well-established. Plaintiff cannot pinpoint when the first comment was made ("sometime in 2020") nor is it clear that he heard it directly because his testimony varies. His assertions go from having heard from another employee that Mr. Cedeño-Abreu had said the statement, to stating that he heard it all the time. And the second string of examples were allegedly heard by plaintiff in March of 2021 while eavesdropping on a conversation between Mr. Cedeño-Abreu and the other manager. From plaintiff's testimony, it is equally or more likely that these comments were addressed to "Dominican" employees rather than older ones, which is an issue given ADEA's "but-for" causation requirement (more on this below).[12]

Plaintiff also supports his animus claim on a phrase that he says was uttered at least once by Mr. Vega, one of defendant's owners, during a meeting in January 2019. That statement was

---

[12] Plaintiff's deposition testimony about whether the quoted statements were directed at his age or his Dominican nationality suggest that they were, *at best*, directed at both. In his deposition, plaintiff assumes inconsistent positions. He first states that he was "directly told, 'Well, you Dominicans want to stake a claim, stake your flag here.' And, they also said, "I don't know why you old guys don't retire. Why don't you retire?'" **ECF No. 57-1**, at 84. He then clarifies that the second of these statement was made by Mr. Cedeño in March of 2021, and that another manager, Reinaldo Burgos, was present. *Id.*, at 85. However, he then further clarifies that these statements were not made directly to him, but rather, he overheard them while Mr. Cedeño was having a conversation with Mr. Burgos, unaware that he was standing nearby listening. *Id.*, at 86 ("The statement was made when we were coming into the office. They weren't actually aware that I was there. They didn't know that I was there close by."). Plaintiff later recounts how he was approaching the management office to meet with Mr. Cedeño but stood for a while just outside, where, in allusion to the same incident, he overheard Mr. Cedeño say to Mr. Burgos the statement mentioning "old guys." *Id.*, at 86, 96-99. Evidently, although plaintiff uses the word "you old guys" in his description of the statement, it could not have been directed at him because neither manager was aware that he was standing outside listening. Furthermore, in response to questioning, plaintiff made clear that he understood they were talking about him when they also referred to "the Dominican." *Id.*, at 101. But when asked whether he was the only Dominican working at Metropol, he admits he was not, and says that he knew they were referring to him because they had used the word "old." *Id.* When pressed about the same type of inconsistency (i.e., substituting "old" or "old guys" for "Dominicans" in his description of the allegedly discriminatory comments) between his interrogatory responses and his testimony, plaintiff merely emphasized that he knew they were talking about him because at some point they had used the word "old," but that the statement "at the time" did not include that word. *See id.*, at 101-104. This all shows that plaintiff cannot reliably establish, and the Court cannot reasonably infer, that the comments evince an age-based discriminatory animus as opposed to another type of discriminatory sentiment.

to the effect that the company's "future" or "hope" was "the youth." *See* ASUMF 22-23, **ECF No. 57** at 17-18 ("In a meeting with all personnel, [Mr. Vega] said that the Company's hope was the youth…. In January 2019, there was a meeting with all employees and [Mr. Vega] again stated that the company's hope was the youth.") (citing to Partial Tr. of Deposition of Francisco Pérez-Abreu, **ECF No. 57-1** at 123-24, 134-36, and Partial Tr. of Deposition (Cont.) of Francisco Pérez-Abreu, **ECF No. 57-2** at 63-64). During his deposition, plaintiff went on to explain that he felt badly upon hearing that comment because he "was not considered to be the future… or the hope of a company" and because he considered that the comment was an "example of being ungrateful" and was "very, very distasteful." Partial Tr. of Deposition (Cont.) of Francisco Pérez-Abreu, **ECF No. 57-2** at 66, 68.

ADEA's substantive discrimination prohibition, contrary to Title VII's, uses "because of" language that requires plaintiffs to establish "but for" causation. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020). Having canvassed plaintiff's evidence of age-based discrimination, the Court cannot help but conclude that it is simply not enough to show that his discipline and termination were solely motivated by his age. As with the Title VII claim, plaintiff has not made a case for taking his claims of age-based disparate treatment to trial.

Therefore, because plaintiff's evidence of pretext and discriminatory animus is insufficient, the motion for summary judgment is hereby **GRANTED** in relation to plaintiff's claim that he was disciplined or terminated on account of his age.

### C. Plaintiff's hostile work environment claims.

Under Title VII and ADEA, "plaintiffs may establish a violation… by demonstrating that an employer required them to work in a hostile or abusive environment." *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Such an environment arises when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (cleaned up). A successful hostile work environment claim must show that:

> [t]he challenged conduct… be both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so. In performing this inquiry, a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Maldonado-Cátala v. Mun. of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (cleaned up); *see also Rivera-Rivera*, 898 F.3d at 91. And moreover, "an employee claiming harassment must demonstrate that the hostile conduct was directed at [her] because of a characteristic protected by a federal anti-discrimination statute." *Rivera-Rivera*, 898 F.3d at 94 (quoting *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7-8 (1st Cir. 2006)) (brackets in original).

Here, plaintiff completely failed to address defendant's contention that there is a lack of allegations of sufficiently severe or pervasive harassment to state a hostile work environment claim. *See* **ECF No. 42** at 6, n.3, and at 17, n.4 ("In the Third Amended Complaint, plaintiff has not plead allegations of harassment anywhere near the level of severity or pervasiveness [needed] to state a hostile work environment claim under the ADEA" or "under Title VII."). Granted, defendant did not much develop the argument, but it did put plaintiff on notice that it was seeking denial of these claims. This leaves the Court with little to go on given plaintiff's apparent abdication. The Court will not do counsels' work for them, as it has "no obligation to supply what counsel has failed to provide." *PR Recovery & Dev. JV, LLC v. López López*, No. CV 22-1205 (ADC), 2023 WL 2713902, at *3 (D.P.R. Mar. 29, 2023).

As seen from the discussion above, the allegedly discriminatory comments and disciplinary actions which plaintiff contends amount to harassment are insufficient to state a claim for discrimination. The Court likewise finds them insufficient to state claims for age and national origin discrimination in the form of a hostile work environment. Accordingly, the motion for summary judgment as to the hostile work environment claims under Title VII and ADEA is **GRANTED**.

### D. Plaintiff's retaliation claims.

Title VII's anti-retaliation provision reads: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees… because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under this subchapter." 42 U.S.C. § 2000e-3(a). ADEA contains a substantially identical anti-retaliation provision. *See* 29 U.S.C. § 623(d). Both statutes' use "because of" language requires plaintiffs to establish "but for" causation. *See Nassar*, 570 U.S. at 343; *Gross*, 557 U.S. at 178.[13] As mentioned above, "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock*, 590 U.S. at 656 (2020).

As with plaintiff's disparate treatment claims, in the absence of direct evidence, retaliation claims under both Title VII and ADEA are examined under the *McDonnell Douglas* framework. *See Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia De Puerto Rico*, 671 F.3d 49, 55 (1st Cir. 2012) (ADEA); *Stratton*, 113 F.4th at 42 (Title VII). A *prima facie* case of retaliation under the ADEA consists of three elements: a plaintiff must establish that "(i) he engaged in [the] protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." *Muñoz*, 671 F.3d at 55. The same formulation applies for retaliation claims under Title VII. *See Rivera-Colon v. Mills*, 635 F.3d 9, 12 (1st Cir. 2011). Plaintiff's burden continues to be a "light" one. *Stratton*, 113 F.4t h at 46 (citing *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008)).

Plaintiff alleges in his operative complaint that he suffered retaliation because he engaged in protected conduct which consisted, among other things, of "opposing [d]efendant's unlawful employment practices, filing a prior judicial action against [d]efendant in federal court, a

---

[13] *Gross* established that "but-for" causation is required of all ADEA claims. *Gross*, 557 U.S. at 178. *Nassar* clarified that Title VII allows mixed-motive causation for discrimination claims but requires "but-for" causation for retaliation claims. *Nassar*, 570 U.S. at 343.

discrimination charge before the EEOC, and this judicial action." **ECF No. 19** at 2, ¶ 10; *see also id.*, at 10, ¶ 51. In their summary judgment filings, the parties assume that the filing of the discrimination charge and of the prior judicial action, *Pérez-Abreu v. Metropol Hato Rey, LLC*, Civ. No. 18-1865 (PG) (D.P.R.), is the predicate protected conduct. *See* **ECF No. 42** at 12-13 ("Plaintiff's asserted protected activity, the filing of the first federal action…."); **ECF No. 60** at 13 ("…the retaliatory causal connection evidence is clear….the month before this case was filed in Court… [d]efendant was already aware that [p]laintiff had filed an EEOC charge."). No mention is made of the filing of the current case constituting the protected conduct. However, there are mentions of the above-captioned case sprinkled throughout the SUMF and ASUMF. Therefore, for purposes of this discussion, the Court will assume that the filing of the first action on November 13, 2018 (*see* **ECF No. 43-1**), of the discrimination charge on March 10, 2020 (*see* SUMF 12, **ECF No. 43** at 4), and of the original complaint here on April 27, 2021 (**ECF No. 1**), is the protected conduct for which plaintiff alleges he was retaliated against.

Similarly, the parties do not clearly delineate which of defendant's purported actions constitute the adverse employment action under the second prong of the *prima facie* case. While plaintiff complains of harassment and, ultimately, termination on account of engaging in protected conduct, no effort is made to frame the issue for the Court. Defendant, for its part,

assumes plaintiff's termination is the adverse employment action. Given that plaintiff did not contest this framing, the Court will accept it as it is.[14]

Defendant argues that plaintiff cannot establish a causal connection between this protected conduct and his termination, much less the "but for" causation required under Title VII and ADEA retaliation claims. **ECF No. 42** at 12-13, 18-20. Plaintiff attempts to refute defendant by pointing to several parts of former Metropol manager Mr. Andino-Medina's deposition testimony, where he states that defendant's management informed him of the pendency of plaintiff' suit against Metropol, as well as other parts of his testimony where he states that plaintiff was treated differently than other employees due to his pending suit against defendant. *See* **ECF No. 60** at 13-14. On reply, defendant contests the weight and validity of these statements and plaintiff's framing of them. *See* **ECF No. 74** at 12-13.

For context, the relevant deposition testimony is described as follows:

- When Mr. Andino-Medina began to work as a manager at Metropol in March 2021, one or more of defendant's owners informed him that plaintiff had a case against defendant. ASUMF 11 and 12, **ECF No. 57** at 16.

- Mr. Andino-Medina observed that plaintiff was treated differently than other employees because, among other things, defendant's owners, not its managers, dealt directly with him in matters such as requests for vacation days (*i.e.*, days off), which

---

[14] Both parties' failure (but especially plaintiff's) to adequately state and argue what the protected conduct and the adverse employment actions at issue are for purposes of a *prima facie* case has overly burdened the Court's task.

they repeatedly denied. ASUMF 15, 16 and 17, **ECF No. 57** at 16; ASUMF 43 and 44, **ECF No. 57** at 20-21.

- In Mr. Andino-Medina's opinion, plaintiff's differential treatment was due to plaintiff's personal differences with defendant's owners and Mr. Cedeño-Abreu or because of his pending lawsuit. ASUMF 38, **ECF No. 57** at 20.

- In Mr. Andino-Medina's opinion, Mr. Cedeño-Abreu was representing defendant's owners in the way he dealt with plaintiff. ASUMF 39, **ECF No. 57** at 20.[15]

In the Court's view, this evidence does not reveal a causal connection between plaintiff's filing of the discrimination charge and the judicial complaints and his termination. All it does is establish that Mr. Andino-Medina's perception of the relationship between plaintiff and Mr. Cedeño-Abreu was that there was some sort of disagreement between them, one that he often classified as personal. *See, e.g.*, ASUMF 37, **ECF No. 43** at 21. Mr. Andino-Medina speculates that it could have been due to plaintiff having filed a lawsuit, but that is, precisely, just speculation. At various points during his deposition, Mr. Andino-Medina refers to it as plaintiff and Mr. Cedeño-Abreu "having beef." *See* **ECF No. 57-12** at 46, 47, 73. And if this is all there is, then

---

[15] Plaintiff argues that Mr. Andino-Medina's deposition statements are admissible as party admission, presumably in reference to Fed. R. Evid. 801(d)(2)(D). **ECF No. 60** at 14. This Rule, however, exempts from the definition of hearsay a "statement that is offered against an opposing party and… was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The problem is that Mr. Andino-Medina ceased to be an employee of defendant in May 2022. Tr. of Deposition of Héctor Luis Andino-Medina, **ECF No. 57-12** at 8. His deposition was taken on July 12, 2023. *Id.*, at 1. None of the statements above were made during his employment with defendant—rather, they reflect Mr. Andino-Medina's own recollections of matters he observed during his employment, but not statements uttered at the time. Therefore, they are not party admissions under Fed. R. Evid. 801(d)(2)(D).

plaintiff's evidence would be insufficient to establish "but for" causation under either Title VII or ADEA given that the motivation behind his termination would be in part a personal disagreement.

On the other hand, plaintiff was terminated on July 7, 2022, and the protected conduct occurred between November 13, 2018 and April 27, 2021. At best, that establishes that plaintiff's protected conduct took place a year and three months prior to the adverse employment action. That weighs considerably against a finding of causation between termination and protected conduct.

Even giving plaintiff some undeserved leeway here and considering the various alleged discriminatory statements analyzed above in relation to his disparate treatment claims, the Court still finds that there is not enough evidence of causality to establish a *prima facie* case. The alluded-to comments are not reasonably related to his protected conduct and do not relate to the decision to terminate him. They may be considered managerial statements expressing momentary frustration, or general, innocuous statements about a company's young workforce, but they do not amount to evidence that plaintiff's protected conduct was the "but for" reason for his termination. Taking the protected conduct out of the equation, defendant is more likely to have terminated plaintiff due to his personal disagreements with its managers and owners or due to one or more of the infractions listed by defendant as the actual cause for his termination. When compared to that evidence, plaintiff's claim of retaliation is clearly lacking in substance.

In sum, plaintiff has not proven by preponderance of the evidence that there is a trial-worthy issue of whether his termination was due to his protected activity. The Court cannot say that there is a genuine and material dispute as to whether the decision was motivated exclusively by either plaintiff's age or national origin. For this reason, the motion for summary judgment as to plaintiff's retaliation claims under Title VII and ADEA is **GRANTED**.

### E. Plaintiff's Puerto Rico law claims.

#### 1. Law 100 age and national origin discrimination claim.

Law 100 is Puerto Rico's anti-discrimination statute and prohibits discrimination both because of age and national origin. P.R. Laws Ann. tit. 29, § 146 *et seq.* "Puerto Rico's Law 100 is a broad antidiscrimination statute analogous to Title VII in many respects." *Pérez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 26 n.10 (1st Cir. 2011). Likewise, "on the merits, age discrimination claims asserted under the ADEA and under Law No. 100 are coterminous." *Dávila v. Corporación De Puerto Rico Para La Difusión Publica,* 498 F.3d 9 (1st Cir. 2007). The only significant difference between the analysis required under Law 100 and ADEA and Title VII is the burden-shifting framework. However, "where a plaintiff has 'adduced no significantly probative evidence that his discharge was motivated by [discriminatory animus],' summary judgment on a pending Law 100 claim is appropriate." *Cerezo-Martin v. Agroman*, 213 F. Supp. 3d 318, 328 (D.P.R. 2016) (quoting *Dávila*, 498 F.3d at 18).

Accordingly, because the Court granted summary judgment on the Title VII and ADEA disparate treatment claims after finding the evidence of pretext and discriminatory animus

insufficient, the motion for summary judgment as to the equivalent Law 100 claims is **GRANTED**.

### 2.   Law 115 age and national origin retaliation claim.

Law 115 is Puerto Rico's anti-retaliation statute. P.R. Laws Ann. t. 29, §194 *et seq.*, and is "largely symmetrical in scope and has parallel evidentiary mechanisms" as Title VII and ADEA's anti-retaliation provisions. *Rivera-Rivera*, 898 F.3d at 97 (cleaned up).

Accordingly, because the Court granted summary judgment on the Title VII and ADEA retaliation claims after finding the evidence of pretext and discriminatory animus insufficient, the motion for summary judgment as to the equivalent Law 115 claims is **GRANTED**.

### 3.   Law 80 wrongful discharge claim.

Law 80 is Puerto Rico's wrongful discharge statute and protects certain employees from being terminated from their employment without just cause. P.R. Laws Ann. t. 29, § 185a *et seq.* "[A] plaintiff who cannot meet his burden to show pretext under the *McDonnell Douglas* framework cannot make out a claim for wrongful discharge under Law 80 because the employer has 'good cause' for the termination." *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 338 (1st Cir. 2022) (citing *Acevedo v. Stericycle of P.R., Inc.*, Civ. No. 19-1652 (JAG), 2020 WL 1126168 at *5 (D.P.R. Mar. 6, 2020) and *Sánchez Borgos v. Venegas Const. Corp.*, Civ. No. 07-1592 (SEC), 2009 WL 928717 (D.P.R. Mar. 31, 2009), *on reconsideration*, Civ. No. 07-1592 (SEC), 2009 WL 1297221 (D.P.R. May 7, 2009)).

As with plaintiff's Law 100 and Law 115 claims, his claim under Law 80 fails given his failure to establish a genuine question as to the issue of pretext. Therefore, the Court deems defendant to have terminated plaintiff with just cause. Accordingly, the motion for summary judgment as to the Law 100 claims is **GRANTED**.

**V.      Conclusion**

For the reasons explained above, the Court **GRANTS** defendant's motion for summary judgment at **ECF No. 42**. Consequently, plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter Judgment accordingly.

        **SO ORDERED**.

At San Juan, Puerto Rico, on this 21st day of October, 2024.

                                        **S/AIDA M. DELGADO-COLÓN**
                                        **United States District Judge**